## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 10 2017, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold E. Kerkhove, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 10, 2017 <br><br> Court of Appeals Cause No. 79A02-1607-CR-1695 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Sean M. Persin, Judge <br><br> Cause Nos. 79D05-1511-F6-531, 79D05-1601-F6-90, & 79D05-1603-F6-217 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Harold Kerkhove (Kerkhove), appeals his conviction and sentence for domestic battery and invasion of privacy, both Class A misdemeanors; and two Counts of invasion of privacy, Level 6 felonies.

We affirm but remand with instructions to correct a sentencing error.

# ISSUES

Kerkhove presents four issues on appeal, which we restate as follows:

(1) Whether Kerkhove can challenge the factual basis supporting his guilty plea on direct appeal;

(2) Whether the trial court abused its discretion in sentencing Kerkhove;

(3) Whether Kerkhove's sentence is appropriate based on the nature of the offenses and his character; and

(4) Whether we should remand this case for correction of a sentencing error.

# FACTS AND PROCEDURAL HISTORY

On November 6, 2015, Kerkhove and his then-wife, Misty Kerkhove (Misty), who were residing in Tippecanoe County, Indiana, had a domestic dispute and the police were called. A ten-day no-contact order was issued against Kerkhove. On November 14, 2015, shortly before the expiration of the no-contact order, Kerkhove went to his house believing that Misty had moved out; however, Misty was present and the two began arguing. In the process,

Kerkhove hit Misty with his fist and strangled her. On November 17, 2015, the State filed an Information under cause number 79D05-1511-F6-00531 (F6-531), charging Kerkhove with Count I, strangulation, a Level 6 felony; Count II, domestic battery, a Class A misdemeanor; and Count III, invasion of privacy, a Class A misdemeanor. A ten-day no-contact order was again put in place.

[5] On January 27, 2016, Misty came home from work and found Kerkhove sitting in her bedroom watching television and drinking alcohol. At the time, there was a no-contact order against Kerkhove. Misty instructed Kerkhove to leave but he refused. Misty called the police for assistance. Based on the violation of the no-contact order, the police arrested Kerkhove. On January 28, 2016, the State filed an Information under cause number 79D05-1601-F6-00090 (F6-90), charging Kerkhove with invasion of privacy, a Level 6 felony. While in jail, Kerkhove made additional contacts with Misty, and on January 31, 2016, the State filed a new Level 6 felony invasion of privacy charge under cause number 79D05-1602-F6-0135 (F6-135).

[6] On March 7, 2016, Misty reported another no-contact violation by Kerkhove to the police. In her report, Misty alleged that while Kerkhove was in jail, he called her eighteen times. Also, Misty showed the officers several envelopes containing letters from Kerkhove, with the first letter received on January 30, 2016, and the last on March 2, 2016. On March 8, 2016, the State filed an Information under cause number 79D05-1603-F6-00217 (F6-217), charging Kerkhove with invasion of privacy, a Level 6 felony.

[7]     On April 6, 2016, the trial court held a guilty plea hearing. Pursuant to a written plea agreement, Kerkhove pled guilty to the domestic battery and invasion of privacy offense under cause F6-531. Also, Kerkhove pled guilty to two Counts of invasion of privacy offenses under cause numbers F6-90 and F6-217. In exchange for his plea, the State dismissed the strangulation charge under cause number F6-135 and the invasion of privacy charge under cause number F6-135. In addition, Kerkhove agreed not to contact or threaten Misty. At the close of the guilty plea hearing, the trial court took Kerkhove's plea under advisement and set the sentencing hearing for May 2, 2016. Shortly after the guilty plea hearing, Kerkhove communicated with Misty on several occasions and he also threatened her.

[8]     Based on Kerkhove's subsequent contact violation on May 2, 2016, Kerkhove's sentencing hearing was converted to a pretrial hearing. On June 30, 2016, the trial court held a Change of Plea hearing based on the contact violations. At the start of the hearing, the State indicated that it would not pursue additional charges against Kerkhove for his ensuing threats and communications with Misty. Thereafter, the trial court questioned Kerkhove as follows:

> [TRIAL COURT]: At this time are you asking the court to accept all the terms of this agreement?
>
> [KERKHOVE]: Yes, sir.
>
> [TRIAL COURT]: Is anyone forcing you to plead guilty here today?
>
> [KERKHOVE]: No.

[TRIAL COURT]:  Alright, then as to [C]ount two, domestic battery as [] [C]lass A misdemeanor, [and] invasion of privacy in [C]ount three as a [C]lass A misdemeanor in F6-531.  And as to [C]ount one invasion of privacy as a Level [6] felony in F6-90.  And as to [C]ount one invasion of privacy as a [L]evel [6] felony in F6-217, how do you plead at this time?

[KERKHOVE]:  Guilty.

(Guilty Plea & Sentencing Tr. pp. 58-70).  In establishing the factual basis for Kerkhove's pleaded offenses, the following exchange occurred:

[STATE]:  Okay.  I'd like to direct your attention to cause number [] F6-531, specifically [] November [14, 2015].  Were you present in Tippecanoe County Indiana on that particular day?

[KERKHOVE]:  Yes, ma'am.

[STATE]:  And while you were in Tippecanoe County Indiana on that particular day, did you have an encounter [with] Misty []?

[KERKHOVE]:  Yes.

[STATE]:  And at that point in time, what was your relationship to Misty []?

[KERKHOVE]:  My wife.

[STATE]:  She was your wife.  And on that day[,] did you touch her in a rude, insolent, or angry way?

[KERKHOVE]:  Yes.

[STATE]:  In a way that would have caused some injury?

[KERKHOVE]:  Yes.

[STATE]:  Injury meaning if someone touched you the same way it would have caused some pain?

[KERKHOVE]:  Yes.

***

[STATE]:  I'd also like to direct your attention in that same cause number [].  Kerkhove to [C]ount three, invasion of privacy.  Again on that same day and time did you have contact either verbal or telephone or by a note with [Misty]?

[KERKHOVE]:  Yes.

[STATE]:  And had you previously–had this court previously entered an *[ex-parte]* protective order which prohibited you from having any sort of contact with her?

[KERKHOVE]:  Yes.

[STATE]:  And so, by contacting her after the issuance of that order that was a violation of it.

[KERKHOVE]:  Correct.

***

[STATE]: . . . Okay.  And then as to cause number [] F6-90, [] Kerkhove I'd like to direct your attention to the date of January [27, 2016].  Were you present in Tippecanoe County Indiana on that particular day?

[KERKHOVE]:  Yes, ma'am.

[STATE]:  While you were in Tippecanoe County on that day, did you violate a no contact order?

[KERKHOVE]:  Yes, ma'am.

***

[STATE]:  And who was that contact with on January [27th]?

[KERKHOVE]:  At the time my wife, Misty [].

[STATE]:  . . . and how did you contact her?

[KERKHOVE]:  She . . . actually come to my place of residence.  So I did [] – misplace on the no contact but I was the one who broke it.

[STATE]:  Okay.

[KERKHOVE]:  Because I did not leave when I supposed to when she come in.

***

[STATE]:  And then I would like to direct your attention to [] F6-217. Specifically, the date spanning January [13, 2016] to March [7, 2016]. Were you present in Tippecanoe County for that period of time?

[KERKHOVE]:  Yes, ma'am.

[STATE]: And Tippecanoe County is in the State of Indiana. And while you were in Tippecanoe County Indiana for that period of time, was there an *[ex-parte]* protective order in place for Misty Kerkhove?

[KERKHOVE]: Yes.

[STATE]: And did you violate that *[ex-parte]* protective order?

[KERKHOVE]: Yes.

[STATE]: And how did you violate it?

[KERKHOVE]: By mail.

[STATE]: By writing her a letter?

[KERKHOVE]: And calling her.

(Guilty Plea & Sentencing Tr. pp. 70-74).

[9] At the close of the hearing, the trial court accepted Kerkhove's guilty plea and proceeded to sentence him. In sentencing Kerkhove, the trial court identified the following aggravating circumstances: criminal history; fourteen probation violations; risk of recidivism; and the nature of the crimes committed. As for mitigating factors, the trial court identified Kerkhove's guilty plea and acknowledged that he had completed academic and occupational certificates while in jail. However, the trial court concluded that the aggravators "far outweigh[ed] the mitigating circumstances." (Guilty Plea & Sentencing Tr. p. 75). Pursuant to the plea agreement, the trial court sentenced Kerkhove as

follows: in F6-531, concurrent executed sentences of 365 days each for the Class A misdemeanors; in F6-90, 730 days with 180 days executed and 545 days suspended for the Level 6 felony; and in F6-217, a suspended sentence of 730 days. Kerkhove's sentences in all three causes were to run consecutive, and his aggregate executed sentence was 545 days.

[10] Kerkhove now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Factual Basis*

[11] Kerkhove first argues that there was insufficient evidence to support the factual basis for his guilty pleas. As the State points out, Kerkhove is precluded from raising this challenge. It is well-settled that a person who pleads guilty cannot challenge his convictions by means of direct appeal. *Robey v. State*, 7 N.E.3d 371, 383 (Ind. Ct. App. 2014) (citing *Kling v. State*, 837 N.E.2d 502, 504 (Ind. 2005)), *trans. denied*. "One consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal." *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996). Instead, post-conviction relief is the proper vehicle for pursuing this type of claim. *See id*. at 396 (rejecting a defendant's challenge to the factual basis supporting his guilty plea to an habitual offender enhancement on direct appeal). Because Kerkhove may not challenge his convictions and the factual basis supporting his guilty pleas on direct appeal, we do not reach the merits of the claim.

[12] Next, Kerkhove contends that the trial court abused its discretion for failing to consider his mental illness as a mitigating factor during sentencing. In *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218, our supreme court outlined a new framework for sentencing review. Within this new framework, "[t]he relative weight or value assignable to [the trial court's] reasons properly found or those which should have been found is not subject to review for abuse [of discretion]." *Id*. at 491. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id*. at 493. "If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Id*. (citation omitted). The *Anglemyer* court rejected the defendant's claim that the trial court overlooked his mental illness as a mitigating factor, concluding that the trial court simply did not find it to be a significant factor influencing its sentencing decision. *Id*.

[13] Post-*Anglemyer*, a proper inquiry is whether Kerkhove's mental disability was a significant mitigating factor supported by the record. "[F]or a defendant's mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*. The State argues and we agree that Kerkhove has failed to

demonstrate such a nexus. Most of the evidence regarding Kerkhove's mental health was documented in the PSI, which noted that Kerkhove had seizures his entire life; had been diagnosed with Bipolar Disorder in November 2015, and for which he was prescribed Depakote and Dilanta; and finally, he had an attempted suicide in 2011. At his sentencing hearing, Kerkhove did not present independent evidence regarding his mental health, only that he was taking medication and desired a mental health evaluation. Since no evidence was presented to show a nexus between his mental illness and the crimes committed, we find no abuse of discretion in the trial court's sentencing decision.

### III. *Inappropriate Sentence*

[14] In addition, Kerkhove claims that his sentence is inappropriate under Indiana Appellate Rule 7(B). Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the

aggregate sentence and how it is to be served are the issues that matter."
*Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a
sentence as appropriate at the end of the day turns on our sense of the
culpability of the defendant, the severity of the crime, the damage done to
others, and a myriad of other considerations that come to light in a given case.
*Id.*

[15] The advisory sentence is the starting point the legislature has selected as an
appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016,
1019 (Ind. 2012). Kerkhove was convicted of two Class A misdemeanors and
two Level 6 felonies. Pursuant to Indiana Code section 35-50-3-2, for his Class
A misdemeanors, Kerkhove faced a sentence of up to one year. For his Level 6
felonies, Kerkhove faced a sentencing range of six months to two and one-half
years, with the advisory sentence being one year. *See* I.C. § 35-50-2-7. Here,
pursuant to Kerkhove's plea agreement, in F6-531, the trial court sentenced
Kerkhove to concurrent executed sentences of 365 days with regards to his
Class A misdemeanors. In one of his Level 6 felonies, the trial court sentenced
Kerkhove to 730 days, with 180 days executed and 550 days suspended. In the
other Level 6 felony, the trial court sentenced Kerkhove to a suspended term of
730 days and placed him on probation. Kerkhove's aggregate executed
sentence was 545 days.

[16] As for the nature of Kerkhove's offenses, the record shows that following a
domestic dispute in November 2015, the police were called to Kerkhove's and
Misty's home, and a ten-day no-contact order was issued against Kerkhove.

Prior to the expiration of that ten-day no-contact order, Kerkhove went to his house and Misty was present. In the process, a fight ensued and Kerkhove ended up strangling and hitting Misty with his fist. The State filed a domestic battery charge and an invasion of privacy charge against Kerkhove. Once again, a no-contact order was issued. In early January 2016, Kerkhove violated an existing no-contact order by being present in Misty's home. The State added a second invasion of privacy charge against Kerkhove. Shortly thereafter, on January 31, 2016, Kerkhove contacted Misty and that fact prompted the State to add another invasion of privacy charge, and Kerkhove was subsequently arrested. Even while in custody, Kerkhove made additional contacts with Misty between March and May 2016.

[17]  As to Kerkhove's character, the record shows that he has an extensive criminal history. Kerkhove's criminal record dates back to 2002, and it includes twenty prior arrests and fourteen probation violations. Most importantly, in 2001, Kerkhove was convicted of similar offenses—invasion of privacy and intimidation against a woman he had a child with. To the extent that Kerkhove links his unreformed criminal character with his purported mental health issues, we find that his argument does not aid his claim on appeal. As noted, there is little to no evidence, other than Kerkhove's own assertions, that he even has mental health issues. Despite his numerous prior contacts with the criminal justice system, Kerkhove has not reformed his criminal behavior. Kerkhove also claims that prior to the instant offenses, he had led a law-abiding life for a period of at least five years. Despite his claim, Kerkhove had no choice but to

be law-abiding citizen at the time since he had been incarcerated for seven years in the Department of Correction for a stalking offense. In light of the foregoing, we cannot say that a 545 days aggregate sentence is inappropriate in light of the nature of the offenses and the character of the offender.

IV. *Sentencing Error*

[18] Lastly, Kerkhove contends that it is necessary to remand this case for correction of the sentencing order. With respect to a sentencing error, "it is in the best interests of all parties that sentencing errors be immediately discovered and corrected." *Robinson v. State*, 805 N.E.2d 783 (Ind. 2004). In general, such errors are most appropriately presented in a motion to correct error or in a direct appeal from the sentencing judgment. *Id.*

[19] As noted, the trial court sentenced Kerkhove pursuant to the plea agreement which capped his maximum sentence to 545 days. In its oral sentencing statement, the trial court sentenced Kerkhove as follows: in F6-531, concurrent executed sentences of 365 days for each of the Class A misdemeanors; in F6-90, 730 days, with 180 days executed and 545 days suspended for the Level 6 felony; and in F6-217, a suspended term of 730 days for the other Level 6 felony. The written sentencing statement tracked the language of the oral sentencing statement; however, the Abstract of Judgment in F6-90 stated something different—*i.e.*, 180 days executed and 550 days suspended.

[20] On appeal, Kerkhove argues that since his total sentence in F6-90 was 730 days, the trial court should have suspended 550 days instead of 545 days. Based on

the error, Kerkhove requests a remand of this cause to the trial court. As noted, pursuant to the plea agreement, Kerkhove's maximum permissible sentence for all his pleaded offenses was 545 days. Here, the trial court's oral and written sentencing statement ordered Kerkhove to serve an executed consecutive sentence of 545 days—*i.e.*, 365 days in #F-531, and in 180 days in #F6-90. Here, we find that the trial court's statement that 545 days were suspended in F6-90 was a clerical error and it should have been 550 days, therefore leaving 180 days executed sentence in that cause. Based on that error, we remand to the trial court for amendment of the sentencing order so as to reflect that Kerkhove's suspended sentence in F6-90 is 550 days instead of 545 days.

# CONCLUSION

[21] Based on the foregoing, we conclude that Kerkhove cannot challenge his conviction following a guilty plea on direct appeal; the trial court did not abuse its discretion in sentencing Kerkhove; Kerkhove's sentence is appropriate based on his character and the nature of the offenses; and finally, in light of the sentencing error, we remand to the trial court for correction.

[22] Affirmed but remanded with instructions.

[23] Crone, J. and Altice, J. concur